UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEBRA L. MALE,                                           **REPORT AND**
                                                         **RECOMMENDATION**
                                  Plaintiff,
                                                         06-CV-0024(A)(M)
v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                  Defendant.

_____

         This case was referred to me by Hon. Richard J. Arcara to hear and report in

accordance with 28 U.S.C. §636(b)(1) (Dkt. #13).  Before me are the parties' cross-motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. ##8, 9).  Oral argument was

conducted before Hon. Kenneth Schroeder, Jr., on October 19, 2006 (Dkt. #12).  For the

following reasons, I recommend that the defendant's motion be denied, and that plaintiff's cross-

motion be granted in part.


                         **PROCEDURAL BACKGROUND**

         Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the decision of the

Commissioner of Social Security denying her application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") (Dkt. #1).  Plaintiff filed an application for

DIB on May 4, 2004 (T66-68).[1]  Her application was denied on August 23, 2004 (T30-33).  On

October 5, 2004 plaintiff filed an application for SSI benefits (T308-311).  A hearing was

_____

         [1]      References to "T" are to the certified transcript of the administrative record filed by the
defendant in this action.

conducted on both claims before Administrative Law Judge John J. Mulrooney II on September 21, 2005 (T312-340). Plaintiff was represented at the hearing by Kenneth R. Hiller, Esq. (T59-60). On October 6, 2005, ALJ Mulrooney issued a decision denying plaintiff's claims on the ground that there were a significant number of jobs in the national economy that plaintiff could have performed (T28-29). The ALJ's determination became the final decision of the Commissioner on December 22, 2005, when the Appeals Council denied plaintiff's request for review (T4-6).

## FACTUAL BACKGROUND

I.    **Medical Evidence**

      A.    **Evidence Regarding Plaintiff's Alleged Physical Impairments**

            1.    **Horizon Health Services ("Horizon")**

Plaintiff treated on a consistent basis with Horizon from August 2003 through 2005 for a variety of health ailments. On August 21, 2003, plaintiff was diagnosed as suffering from fat redistribution in the lower extremities, as well as substance and tobacco abuse (T204). In October 2004 plaintiff was diagnosed with degenerative joint disease, asthma, history of substance abuse, smoker, and a history of depression (T189). In May 2005 plaintiff was also diagnosed with stable hypertension, stable asthma, right shoulder pain, and tobacco abuse (T191). In 2005, plaintiff was diagnosed with dysfunctional uterine bleeding and underwent "dilation and curettage and endothermal ablation therapy" (T283).

2. **Consultative Examination**

On June 23, 2004, Samuel Balderman, M.D., performed an examination at the request of the Commissioner (T125-28), and diagnosed plaintiff with obesity, history of substance abuse, and a psychiatric disorder (T127). He concluded that plaintiff had "moderate limitations in sustaining physical activities due to poor weight control and deconditioning" (T127-128).

B. **Evidence Regarding Plaintiff's Alleged Mental Impairments**

1. **Horizon**

Plaintiff was first treated at Horizon on December 1, 2003 (T154-62), and diagnosed with anxiety disorder, not otherwise specified (T162). At her initial psychiatric examination on January 12, 2004, Meliton Tanhehco, M.D., reported that plaintiff had no delusions, hallucinations, or suicidal ideations (T153). Among other observations, Dr. Tanhehco noted that plaintiff was alert and fully oriented with no gross cognitive impairment, and of average intelligence (Id.). Dr. Tanhehco diagnosed plaintiff with anxiety disorder, not otherwise specified and polysubstance abuse (Id.). Dr. Tanhehco's treatment notes indicate that plaintiff continued to treat with him from March through June 2004 (T136-39). In March 2004, plaintiff had no psychosis, delusions, or suicidal ideation, and was pleasant and psychiatrically stable (T139). In April 2004, Dr. Tanhehco reported that plaintiff was stable and well-groomed, with no mood swings or lethality concerns (T138). In May 2004, plaintiff was not sleeping well, irritable, reported some compulsive eating, and Dr. Tanhehco prescribed Lexapro and Trazodone (T137.).

On June 20, 2005, Dr. Tanhehco completed a Medical Assessment Of Ability To Do Work-Related Activities (T247-48), in which he noted that "[plaintiff] reports symptoms of generalized anxiety, social anxiety, difficulty concentrating, and difficulty with thought organization. These symptoms may impair her ability to function in a work environment" (T247-248). Dr. Tanhehco found that plaintiff had fair ability to follow work rules, relate to co-workers, deal with the public, interact with a supervisor, and function independently (Id.). However, he found that she had poor ability to use judgment, deal with work stress, and to maintain attention/concentration (Id.). Ultimately, Dr. Tanhehco concluded that plaintiff's "mental health symptoms may impair [her] ability to function in a work environment" (T248).

Plaintiff also continued to treat with her mental health counselor, Della A. Riolo, C.S.W.R., from February 2004 through May 2005, Ms. Riolo reported that plaintiff was prompt, alert, oriented, and psychiatrically stable (T142, 144, 146, 148, 150). Ms. Riolo's notes reflect that in February 2004 plaintiff's vocational counsel believed she was able to work full-time, but Ms. Riolo believed that she was only able to work part-time (T148).

On September 9, 2004, Jessica Kane, M.S., C.R.C., wrote to the Niagara County Department of Social Services, indicating that it was her recommendation that plaintiff not return to work at that time because in the past, plaintiff's work environment and drug use were intertwined and plaintiff was currently attempting to change this lifestyle (T58). Ms. Kane also opined that plaintiff's "current mental health status is not stable enough to indicate a return to work at this time" (Id.). According to Ms. Kane, plaintiff continued to experience depression, sleep disturbance, and social anxiety that would impede her productivity and performance in a work environment (Id.).

-4-

In May 2005, Ms. Kane completed a status update for plaintiff, which indicated that she suffered from anxiety disorder, not otherwise specified (T237, 259). Ms. Kane also completed an updated comprehensive behavioral health assessment for plaintiff in June 2005, in which plaintiff reported "symptoms of generalized anxiety, social anxiety, agitation, difficulty concentrating, and sleep disturbance" (T249).

On September 20, 2005, Kathleen Noe of Horizon performed a mental status examination on plaintiff (T303-05).[2] Ms. Noe found that plaintiff had fair ability to concentrate, good attention, fair immediate memory, good recent memory, fair remote/long-term memory, good insight, and fair judgment (T305).

## 2.    Consultative Examinations

On June 23, 2004, Thomas Ryan, Ph.D., performed a consultative psychiatric evaluation in which he found that plaintiff's thought processes "were coherent and goal directed without evidence of hallucinations, delusions, or paranoia" (T122). Plaintiff's attention, concentration, and memory were also intact (Id.). Plaintiff's cognitive functioning was in the average range, and her insight and judgment were fair (Id.). Based on his examination, Dr. Ryan concluded that plaintiff,

> "can follow and understand simple directions and instructions, perform simple tasks, and maintain attention and concentration, and maintain a regular schedule. Plaintiff is capable of learning new tasks but may have some difficulty performing complex tasks. Her decision-making is generally adequate when she is drug-free. She can relate adequately with others. She has some minor difficulties dealing with stress. The results are consistent with the allegations" (T123).

---

[2]    The record does not indicate whether Ms. Noe is a doctor, social worker, or counselor.

Dr. Ryan diagnosed plaintiff with post traumatic stress disorder and "polysubstance abuse in remission for one year in a controlled environment" (T123).

On July 10, 2004, George Burnett, M.D., a non-examining State Agency physician, performed a residual functional capacity assessment on plaintiff and concluded that she was moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting (T163-64).

### III.   Administrative Hearing Conducted on September 21, 2005

#### A.   Plaintiff's Testimony

Plaintiff, who was 47 years old at the time of the hearing, testified that she had been attending community college on a full-time basis since September 2004 (T325-26, see T109-12), with the assistance of a "special teacher", as well as individualized testing conditions (T326).  Plaintiff lived in Fellowship House, a half-way house, until October 2004, and now lives with her boyfriend (T317).  Plaintiff has ceased reading because of her inability to concentrate (T321-322).  Plaintiff testified that she was unable to work on a full-time basis because of her difficulty concentrating, as well as her asthma and leg problems (T318).  Plaintiff claimed that she had not abused drugs in the two years prior to the hearing (T322).

### B.      Vocational Expert Testimony

Julie Andrews, a vocational expert, testified (T331-39) that plaintiff's past job as

a hair stylist was a skilled position with light exertion (T331-332).  Ms. Andrews testified "that

an individual with plaintiff's past relevant work experience and residual functional capacity was

capable of making an adjustment to other jobs in the regional and national economy including,

small products assembler and laminating machine offbearer.  She further testified that an

individual who was off task more than 10 percent of the day, excluding breaks, could not be

gainfully employed in any competitive position in the regional or national economy (T335).

### ALJ Mulrooney's Decision

ALJ Mulrooney found that plaintiff had the following severe impairments:

"generalized anxiety disorder, a history of polysubstance abuse, osteoarthritis of the left leg

secondary to remote fractures of the tibia and fibula, status post open reducation internal fixation

repair, asthma, and obesity" (T19).  He found that plaintiff did not have an impairment or

combination of impairments which met or medically equaled the criteria of an impairment

(defined in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations

No.4), and concluded that plaintiff had the residual functional capacity:

> "To perform light work that requires no more than occasional
> balancing, stooping, or climbing of ramps or stairs; that requires no
> kneeling, crouching, crawling, or climbing of ladders, ropes, or
> scaffolds; that requires no more than occasional pushing and
> pulling with the left lower extremity, to include the operation of
> foot pedals; that requires no concentrated exposure to fumes,
> odors, dust, gases, or poor ventilation; that requires no more than
> simple, routine, repetitive tasks, not performed in a fast-paced
> production environment, involving only simple, work-related
> decisions, and in general, relatively few work place changes; and

that requires no more than occasional interaction with supervisors, coworkers, and the general public" (T25).

In reaching this conclusion, ALJ Mulrooney rejected the testimony of plaintiff's treating physician, Dr. Tanhehco, on the grounds that he "relied quite heavily on the claimant's subjective reports of her symptoms and limitations and uncritically accepted them as true" (T24-25). He also concluded that Dr. Tanhehco's opinion that plaintiff's symptoms "may" impair her ability to function in a work environment was "not [a] clear statement that the claimant is disabled" (T24-25), and that "insofar as [it] is construed as an opinion that the claimant's impairments are disabling, it is rejected" (Id.). He further found that even if Dr. Tanhehco's statement were to be construed as an opinion that plaintiff was disabled, it was

> "inconsistent with the evidence of record  indicating that her concentration, attention, and memory are intact, and . . . .also inconsistent with Tanhehco's [*sic*] own opinion indications that she has a fair ability to follow work rules, relate to co-workers, deal with the public, interact with a supervisor, function independently, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.  Finally, the residual functional capacity set forth . . . . includes limitations pertaining to the claimant's impaired concentration and low stress tolerance" (T25).

However, ALJ Mulrooney accorded substantial weight to Dr. Ryan's  opinion, finding that it was "based on a comprehensive, direct examination of the claimant and . . consistent with the clinical and objective findings of the record" (T24).

ALJ Mulrooney determined that plaintiff lacked the residual functional capacity to perform her past relevant work as a hair stylist (T26).  However, based on the vocational expert's testimony and the consultative examinations, he found that plaintiff was capable of making a

successful adjustment to another field of work, and concluded that she was not under a disability at any time through the date of his decision (T27).


## DISCUSSION AND ANALYSIS

### I.      Scope of Judicial Review

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited.  This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner.  Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984).  Rather, the Commissioner's decision may be reversed only when it is based on legal error or is not supported by substantial evidence in the record as a whole.  Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  Martin v. Shalala, 93-CV-898, 1995 WL 222059, at *5 (W.D.N.Y. March 20, 1995) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, I must first determine "whether the Commissioner applied

the correct legal standard". Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to

apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.


## II.     The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled

"if he is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).  The

impairments must be  "of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy . . . ." 42 U.S.C.

§1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

1.     The Commissioner considers whether the claimant is currently engaged in
       substantial gainful activity.

2.     If not, the Commissioner considers whether the claimant
       has a 'severe impairment' which limits his or her mental
       or physical ability to do basic work activities.

3.     If the claimant has a 'severe impairment,' the
       Commissioner must ask whether, based solely on medical
       evidence, claimant has an impairment listed in Appendix 1
       of the regulations.  If the claimant has one of these
       enumerated impairments, the Commissioner will
       automatically consider him disabled, without considering
       vocational factors such as age, education, and work
       experience.

4.      If the impairment is not 'listed' in the regulations, the
        Commissioner then asks whether, despite the claimant's
        severe impairment, he or she has residual functional
        capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work,
        the Commissioner then determines whether there is other
        work which the claimant could perform.  The
        Commissioner bears the burden of proof on this last step,
        while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000) (citing DeChirico v. Callahan, 134 F. 3d

1177, 1179-80 (2d Cir. 1998)); see 20 C.F.R. §§404.1520, 416.920.


## III.   Analysis

Plaintiff argues that she is entitled to judgment because ALJ Mulrooney failed to

afford controlling weight to Dr. Tanhehco's opinion (Dkt. #8, p. 5-9).  Alternatively, plaintiff

argues that the case should be remanded because the ALJ failed to contact Dr. Tanhehco to fill

the gaps in his opinion (Id., at pp. 9-10).  In response, the Commissioner asserts that the

decision was supported by substantial evidence (Dkt. #10, pp. 17-24), and that ALJ Mulrooney

did not err in rejecting Dr. Tanhehco's opinion, because it was not supported by objective

medical findings and was contradicted by other evidence in the record (Dkt. #11, pp. 1-5).  The

Commissioner also argues that ALJ Mulrooney was not required to contact Dr. Tanhehco

because the evidence before the ALJ was sufficient for him to determine that plaintiff was not

disabled (Dkt. #11, pp. 56).

Generally, the Commissioner must give controlling weight to the opinion of a

treating physician controlling weight if the opinion is well supported by medically acceptable

-11-

clinical and laboratory diagnostic techniques and not inconsistent with other substantial

evidence in the record, such as the opinions of other medical experts.  See 20 C.F.R.

§404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).  However, "[t]he Second

Circuit has made clear, . . . that an ALJ cannot simply discount a treating physician's opinion

based on a lack of clinical findings that accompany that opinion.  Rather, the ALJ has an

affirmative duty to develop the record and seek additional information from the treating

physician, *sua sponte*, even if plaintiff is represented by counsel".  Colegrove v. Commissioner

of Social Security, 399 F. Supp. 2d 185, 189 (W.D.N.Y. 2005) (Larimer, J.) (citing Schaal v.

Apfel, 134 F.3d 496, 505 (2d Cir. 1998); Clark v. Commissioner of Social Security, 143 F. 3d

115, 118 (2d Cir. 1998).

        The record demonstrates that there is a  divergence of opinion regarding the

impact of plaintiff's impairments had on her ability to concentrate, deal with stress, and her

judgment.  Dr. Tanhehco opined that plaintiff had "poor"[3] ability to use judgment, deal with

work stress, and maintain attention and concentration (T247-248).  On the other hand, Dr. Ryan

found that plaintiff's stress was minor, that her concentration was intact, and that her judgment

was fair (T122). Dr. Burnett, a non-examining consultative physician, concluded that plaintiff

was moderately limited in her ability to maintain attention and concentration for extended

periods (T163-64).  Likewise,  an evaluation performed by Kathleen Noe of Horizon (Dr.

Tanhecho's employer) concluded that  plaintiff had fair ability to concentrate, good attention,

---

        [3]      "Poor" was defined on the form that Dr. Tanhehco completed as "low level of
functioning in this area will frequently significantly interfere and/pr preclude the performance of even
simple work tasks" (247).

fair immediate memory, good recent memory, fair remote/long-term memory, good insight, and

fair judgment (T303-05).

    In rejecting Dr. Tanhehco's conclusion that plaintiff had a poor ability to use

judgment, deal with work stress, and maintain attention/concentration, ALJ Mulrooney noted

that Dr. Tanhehco's "statement strongly suggests that [he] relied quite heavily on the clamant's

subjective reports of her symptoms and limitations and uncritically accepted them as true"

(T24).   While ALJ Mulrooney was not bound to accept Dr. Tanhehco's conclusions as binding,

before rejecting them outright based on his apparent improper reliance on plaintiff's statements,

he was obligated to contact Dr. Tanhehco and determine whether this was in fact the basis for

his findings, and whether it was appropriate for him to rely on plaintiff's subjective complaints.

See 20 C.F.R. §404.1512(e)(1) ("We will seek additional evidence or clarification from your

medical source when the report from your medical source contains a conflict or ambiguity that

must be resolved, the report does not contain all the necessary information, or *does not appear*

*to be based on medically acceptable clinical and laboratory diagnostic techniques*" (emphasis

added)); SSR. 96-2p, 1996 WL 374188, at *4 (July 2, 1996)[4]; Schaal, supra, 134 F.3d at 505

("even if the clinical findings were inadequate, it was the ALJ's duty to seek additional

information from [the treating physician] *sua sponte*."); Pratts v. Chater, 94 F.3d 34, 39 (2d

Cir.1996) ("When there are gaps in the administrative record" or where "we are unable to

fathom the ALJ's rationale in relation to the evidence in the record without further findings or

---

[4]   "[I]n some instances, additional development required by a case-for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings-may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record."

clearer explanation for the decision", remand is appropriate (internal quotation marks omitted));

Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) ("When the opinion submitted by

a treating physician is not adequately supported by clinical findings, the ALJ must attempt, *sua*

*sponte*, to develop the record further by contacting the treating physician to determine whether

the required information is available" (citing 20 C.F.R. §404.1512(e)).

      While ALJ Mulrooney appeared to believe that it was improper for Dr. Tanhehco

to rely on plaintiff's subjective complaints in making his findings, in doing so, he improperly

substituted his judgment for that of the treating physician. See Rosa v. Callahan, 168 F. 3d 72,

79 (2d Cir. 1998) (in rejecting the treating physician's opinion for that of the treating physician.

If he had contacted  Dr. Tanhehco, ALJ Mulrooney might have learned that it was acceptable for

him to rely on plaintiff's subjective reports of her symptoms and limitations in making his

findings (T24).  See Cutler v. Weinberger, 516 F. 2d 1282, 1286-87 (2d Cir. 1975) ("While a

claimant must show that the physical or mental impairment by reason of which he claims to be

disabled 'results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques,' this does

not mean that medical opinion must necessarily be supported by 'objective' clinical or

laboratory findings." (quoting 42 U.S.C. §423(d)(3)); Johnson v. Heckler, 607 F. Supp. 1390-

1394 (D.C.Cal 1985) ("When mental illness is the basis of a disability claim clinical and

laboratory data may consist of the diagnoses and observations of professionals trained in the

field of psychopathology.  The report of a psychiatrist should not be rejected simply because of

the relative imprecision of the psychiatric methodology or the absence of substantial

documentation, unless there are other reasons to question the diagnostic technique.").

Additionally, although Dr. Tanhehco's opinion regarding whether plaintiff was disabled is an issue reserved for the Commissioner, SSR 96-5p, provides in relevant part that:

> "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR-96-5p, 1996 WL 374183, at *6  (S.S.A.).

"While SSR 96-5p requires an ALJ to make 'every reasonable effort' to re-contact a treating physician to clarify opinions not supported by the evidence, this obligation only arises when the ALJ 'cannot ascertain the basis of the opinion from the case record.' " Mendez v. Barnhart, 2007 WL 186800, *12 (S.D.N.Y. January 23, 2007).  Consequently, because ALJ Mulrooney was clearly uncertain about the basis for Dr. Tanhehco's finding that plaintiff may be disabled, he also had an obligation to clarify this with Dr. Tanhehco.

In sum, it is necessary for ALJ Mulrooney to contact Dr. Tanhehco because if asked, he might be able to clarify the clinical support for his findings and opinion, which could potentially cause  him to afford greater, if not controlling weight, to Dr. Tanhehco's opinion as plaintiff's only treating physician for her psychological ailments. See Clark, supra, 143 F. 3d at 118. Indeed,  "Dr. [Tanhehco's] failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." Id.

Once ALJ Mulrooney clarifies the basis for Dr. Tanhehco's findings, he may assess the medical evidence accordingly.  However, absent this inquiry, it was improper for ALJ

-15-

Mulrooney to reject Dr. Tanhehco's findings and opinion. Accordingly, I recommend that the case be remanded to the Commissioner, with directions to reconsider plaintiff's application after contacting Dr. Tanhehco.[5]

## CONCLUSION

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings (Dkt. #9) be DENIED, and that plaintiff's motion for judgment on the pleadings (Dkt. #8) be GRANTED to the extent that it seeks to vacate the Commissioner's determination and to remand the case to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate

---

[5] Although plaintiff requests that the matter be remanded for purposes of calculating benefits, this is warranted only "when the record provides persuasive proof of disability" and a remand for further proceedings "would serve no purpose." Parker v. Harris, 626 F. 2d 225, 235 (2d Cir. 1980). Because the record before me does not necessarily compel a finding of disability, remand is necessary.

judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority.  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation, may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

Dated:  August 24, 2007

JEREMIAH J. MCCARTHY
United States Magistrate Judge